UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| RONRICO JOSLIN, WALTER JOSLIN, and MARY MITCHELL, <br><br> Plaintiffs, <br><br> v. <br><br> METRO NASHVILLE/DAVIDSON COUNTY, ET AL., <br><br> Defendants. | Case No. 3:12-cv-1284 <br> Judge Aleta A. Trauger |

# MEMORANDUM

Pending before the court are several motions related to the plaintiffs' First Amended Complaint. (Docket Nos. 26, 28, 29, 31, 32, 34, and 47.) For the reasons stated herein, Count Three of the First Amended Complaint will be dismissed with prejudice as to all defendants, Counts Four, Five, and Six will be dismissed with prejudice relative to Metro Nashville only, the plaintiffs will be required to file a more definite statement of their claims with respect to the named defendant officers, the plaintiffs will be granted leave to file a Second Amended Complaint consistent with this opinion, and the defendants will be without prejudice to move for dismissal of any claims asserted therein.

# BACKGROUND[1]

---

[1]As explained herein, the court finds it necessary to evaluate whether certain proposed amendments to the First Amended Complaint are futile. Thus, unless otherwise noted, the background section herein is based on the allegations in the Proposed Second Amended Complaint (Docket No. 47, Attachment No. 1), drawing all reasonable inferences in favor of the plaintiffs. The court also notes that, in terms of clarity, the plaintiffs' allegations leave much to be desired. At any rate, the court summarizes the gravamen of the allegations herein.

1

As of December 2011, Walter Joslin ("Walter"), his brother Ronrico Joslin ("Ronrico"), and his mother Mary Mitchell ("Mitchell") were living at 1819 16th Avenue North in Nashville Tennessee ("the Joslins' house"). Briefly, the plaintiffs allege that, on or about December 12, 2011, MNPD officers entrapped Walter into a false charge of purchasing drugs at a "crack house" on 1823 16th Avenue North (two doors from the Joslins' house), beat him in front of Ronrico and Mitchell, pursued and arrested Ronrico and Mitchell on false charges, confiscated Ronrico's cell phone – which Ronrico had used to tape the incident – and removed the video card from the phone to hide incriminating evidence. The plaintiffs also allege that, pursuant to a "code of silence," MNPD officers lied about the circumstances of the incident in their search warrants, in testimony in Tennessee state court criminal hearings related to the charges against Ronrico and Mitchell, and in statements to MNPD internal investigators.

The plaintiffs also allege that, as a result of the MNPD officers' supposed lies and misrepresentations, Ronrico and Mitchell were coerced into pleading to false criminal charges. Furthermore, the plaintiffs allege that the MNPD's Office of Professional Accountability ("OPA") conducted an internal investigation and issued a written report of its findings, in which the OPA found no misconduct by any of the officers involved in the December 2011 incident and did not locate Ronrico's missing video card. On May 17, 2012, presumably in connection with this investigation, the plaintiffs had provided sworn statements to the OPA.[2]

Finally, the plaintiffs allege that, on November 28, 2012, a group of approximately eight

---

[2]It is not clear from the allegations when the OPA issued its report. The plaintiffs do allege that the investigation was "memorialized in the final report of OPA file number IA2012-00034)," but they do not state the date of that report. At any rate, in support of its Motion for Partial Dismissal, Metro Nashville has acknowledged the existence of this report, which it states is comprised of two volumes spanning 200 pages. (Docket No. 28 at p. 4 n.3.)

MNPD officers retaliated against the plaintiffs for reporting charges of misconduct after the December 2011 incident. On that date, the eight officers allegedly approached the Joslins' house *en masse* for the ostensible purpose of serving Mitchell with an arrest warrant for failing to timely pay probation fees. When Mitchell answered the door, the eight officers, including Strickling, Jason Sweeny, and Adam Read (as well as other unnamed officers), did not actually have or present a valid search warrant, nor did they obtain consent to a warrantless search from Mitchell. Instead, the officers allegedly burst into the house and conducted an "exhaustive and destructive (wall-breaking)" "search" of the Joslins' house, resulting in a criminal charge against Mitchell for "unlawful use of drug paraphernalia." The plaintiffs allege that Strickling, Sweeny, and Read had been investigated by the OPA in connection with the December 2011 incident. The plaintiffs also allege that Strickling and Read testified at an April 16, 2013 hearing concerning the pending criminal charges against Mitchell.

Based on these allegations, the plaintiffs have asserted claims against Metro Nashville/Davidson County ("Metro Nashville"), twelve named defendant MNPD officers, and unknown MNPD officers. These claims include: (1) Count One – claims against all defendants under § 1983[3]; (2) Count Two – claims against all defendants under Tenn. Code Ann. § 4-21-701 for "malicious harassment"; (3) Count Three – claims against all defendants under Tenn. Code Ann. § 39-17-309 for "civil rights intimidation"; (4) Count Four – claims against all defendants for assault and battery under Tennessee law; (5) Count Five – claims against all defendants for outrageous conduct under Tennessee law; (6) Count Six – claims against all defendants for

---

[3]The First Amended Complaint was vague as to whether this count was asserted against Metro Nashville only or against all defendants. The plaintiffs' Proposed Second Amended Complaint would clarify that the plaintiffs assert § 1983 claims against all defendants.

negligence/gross negligence under Tennessee common law and under Tennessee statutory law.

Currently, the operative pleading is the First Amended Complaint, which the plaintiffs filed as a matter of right under Fed. R. Civ. P. 15 on February 20, 2013. (Docket No. 25.) Certain defendants collectively have filed six motions directed to the allegations in the First Amended Complaint. Metro Nashville and officer defendants Eby, McIsaac, Starling, Read, Mackall, Galluzi, Lane, and Pirtle (collectively, "Eby") filed a Motion for Partial Dismissal under Rule 12(b)(6) (Docket No. 26), along with a Motion for a More Definite Statement as to certain claims under Rule 12(e) (Docket No. 28). Defendant Detective Donaldson filed a Motion for Partial Dismissal under Rule 12(b)(6) (Docket No. 29) and an accompanying Motion for a More Definite Statement under Rule 12(e) (Docket No. 31); and (3) defendant Officer Strickling filed a Motion for Partial Dismissal under Rule 12(b)(6) (Docket No. 32) and an accompanying Motion for a More Definite Statement under Rule 12(e) (Docket No. 34).[4] Collectively, the Rule 12(e) motions ask the court to require the plaintiffs to specify which claims apply to particular officer defendants, only two of whom were identified by name in the underlying allegations.[5]

The plaintiffs filed a Response in opposition to the pending motions (Docket No. 35), to which Metro Nashville and Eby filed a Reply (Docket No. 43), Donaldson filed a Reply (Docket No. 41), and Strickling filed a Reply (Docket No. 46). After the Rule 12(b)(6) motions were

---

[4]It does not appear that named defendants Mitch Kizer and Jason Sweeny have been served with a copy of the original Complaint or the First Amended Complaint, which would explain why those named defendants have not joined in the pending motions or filed separate motions. The docket contains no record of any attempt to serve Kizer. With respect to Sweeny, the docket contains a Summons directed to Sweeny that was returned unexecuted. (Docket No. 8.) The service portion of that Summons states that "Officer [Sweeny] is on FMLA and return is unknown." (*Id.* at p. 2.)

[5]The Proposed Second Amended Complaint contains allegations related to a third officer defendant, officer Read.

fully briefed, the plaintiffs filed a Motion for Leave to Amend the First Amended Complaint under Rule 15(a), seeking leave to file a Proposed Second Amended Complaint (Docket No. 47, Ex. 1). As grounds for seeking leave, the plaintiffs argue that defendants Strickling, Sweeny, and Read provided testimony at an April 16, 2013 hearing in General Sessions Court that now puts plaintiffs "in a position to amend their Complaint to include more specific facts than were previously in their possession." (Docket No. 47 ¶ 5.) The defendants filed a Response in opposition to the plaintiffs' Motion for Leave (Docket No. 48), arguing that the stated basis for the plaintiffs' Rule 15(a) motion does not justify the proposed amendments.

Aside from moving for leave to file a Proposed Second Amended Complaint, the plaintiffs have not formally opposed the officer defendants' requests for a more definite statement.

## ANALYSIS

**I.     Interactions Among Motions Under Rule 12(b)(6), Rule 12(e), and Rule 15(a)**

In the Rule 12(b)(6) and the Rule 12(e) motions, the defendants collectively identified (1) a host of perceived pleading deficiencies in the First Amended Complaint, and (2) certain claims that will be barred regardless of any amendment thereto. In the plaintiffs' Response in opposition, the plaintiffs argued that the First Amended Complaint was not deficient, in part based on improper references to allegations not contained in that pleading. Of course, Rule 12(b)(6) motions test the sufficiency of the allegations contained in a pleading, without reference to any supplementation of those allegations in a party's briefing in response to a Rule 12 motion. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88-89 (6th Cir. 1997) ("Matters outside of the pleadings are not to be considered by a court ruling on a 12(b)(6) motion to dismiss.") Perhaps

recognizing this issue (albeit belatedly), the plaintiffs filed the instant Motion for Leave to Amend the First Amended Complaint. Although the Proposed Second Amended Complaint contains some additional allegations premised on the April 16, 2013 testimony, several of the amended allegations actually purport to address pleading deficiencies identified by the defendants in their Rule 12(b)(6) motions and (to a very a limited extent) the Rule 12(e) motions, without reference to the April 16, 2013 hearing.

The manner in which the plaintiffs have handled their pleadings and the pending motions is not commendable. Only after the defendants' Rule 12(b)(6) motions were briefed and without addressing the Rule 12(e) motions, plaintiffs now ask the court to grant them leave to amend their complaint (1) based on a pretext that only partially justifies the proposed amendments; and (2) does not fully address the defendant officers' meritorious demands for a more definite statement of the claims against them. The First Amended Complaint allegations also strongly suggest that the plaintiffs (and their attorneys) possess information that would enable them to clarify and focus their claims against the officer defendants, yet they have not done so, despite being put on notice of the pleading deficiency. Absent the defendants' requested clarification, the defendants cannot adequately defend themselves against claims for which their only alleged connection is being named in the caption of this case.

Notwithstanding these concerns, the court is also conscious of two overarching principles: (1) under Rule 15(a), motions for leave to amend "shall be freely given when justice so requires," *Midkiff v. Adams Cnty. Reg'l Water Dist*, 409 F.3d 758, 767 (6th Cir. 2005) (quoting Fed. R. Civ. P. 15(a)); and (2) ultimately, cases should be resolved on their merits. Given the gravity of the underlying allegations and the fact that this case is in its nascent stages,

the court will grant the plaintiffs leave to amend their First Amended Complaint. However, the defendants have shown that certain claims will be dismissed regardless of any proposed amendments to the First Amended Complaint, thereby meeting the standard for futility. *See Midkiff*, 409 F.3d at 767; *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss.") Also, the court intends to grant the Rule 12(e) motions, which the Proposed Second Amended Complaint does not adequately address. Under these circumstances, it would be inefficient for the court to permit the amendments in their proposed form, where some claims asserted therein are plainly futile and where the defendants would inevitably move (justifiably) for a more definite statement on the same grounds now asserted.

In the interest of judicial economy and under the particular procedural circumstances presented here, the court will permit the plaintiffs to amend the First Amended Complaint, but the court will (a) dismiss certain claims from the case under the Rule 12(b)(6) standard, (b) require the plaintiffs to make a more definite statement in certain specified respects, and (c) permit the defendants to respond to the amended allegations under Rule 12(b)(6) in the normal course.

## II.     Claims Subject to Dismissal[6]

---

[6] For purposes of this section, the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

7

### A. Count III Will be Dismissed Entirely

The plaintiffs purport to assert independent claims under (1) Tenn. Code Ann. § 4-21-701 for "malicious harassment" (Count Two) and (2) under Tenn. Code Ann. § 39-17-309 for "civil rights intimidation" (Count Three). In *Washington v. Robertson Cnty.*, 29 S.W.3d 466, 472, 473 (Tenn. 2000), the Tennessee Supreme Court held that a civil claim of malicious harassment under Tenn. Code Ann. § 4-21-701 is derived from the criminal offense of civil rights intimidation under Tenn. Code Ann. § 39-17-309. In *Davis v. Tenn. Wildlife Resources Agency*, No. W2005-00406-COA-R3-CV, 2006 WL 861352, at *7 (Tenn. Ct. App. Apr. 5, 2006), the Tennessee Court of Appeals clarified what the Tennessee Supreme Court implicitly had found in *Washington*: Tenn. Code Ann. § 39-17-309 does not itself confer a private right of action. Here, the plaintiffs have cited no contrary authority, and the court finds the *Davis* court's reasoning to be persuasive. Therefore, the court finds that Count Three, which purports to assert an independent cause of action under § 39-17-309, must be dismissed as to all defendants.[7]

### B. Certain State Law Claims Against Metro Nashville Will be Dismissed

The Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. §§ 29-20-101 *et seq.*, codifies the state's common law rules concerning sovereign immunity and states exceptions to the general grant of immunity from suit. *See Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). Section 29-20-205 waives the state's general immunity from suit "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment," unless the injury arises out of certain enumerated intentional torts, including infliction of mental anguish and "civil rights" claims. Stated another way, municipal entities are

---

[7]Count Three would be subject to dismissal regardless of any amendments that plaintiffs make to their First Amended Complaint.

liable for negligent acts or omissions of their employees acting within the scope of their employment, except where the negligence "arises out of" the infliction of mental anguish or civil rights claims, in which case the municipality retains its immunity from suit.

1. Negligence/Gross Negligence Claim

Here, the plaintiffs concede that Metro Nashville retains immunity against their negligence/gross negligence claims (Count Six) because those claims arise out of the plaintiffs' civil rights claims. *Accord Jackson v. Thomas*, No. M2010-01242-COA-R3CV, 2011 WL 1049804, at *5-*7 (Tenn. Ct. App. Mar. 23, 2011) (holding that, under TGTLA Section 29-20-205, county retained sovereign immunity against plaintiff's claim for negligence arising out of alleged violation of federal Fourth Amendment rights). Therefore, the court will dismiss with prejudice the negligence/gross negligence claims against Metro Nashville.

2. Outrageous Conduct/Intentional Infliction of Emotional Distress

Under TGTLA Section 29–20-205, a governmental entity retains sovereign immunity from claims for intentional infliction of emotional distress. *See Sallee v. Barrett*, 171 S.W.3d 822, 829 (Tenn. 2005); *Jackson*, 2011 WL 1049804, at *6 (holding that, under TGTLA Section 29-20-205, county retained sovereign immunity against plaintiff's claim for intentional infliction of emotional distress). It appears that, under Tennessee law, the tort of outrageous conduct is synonymous with the tort of intentional infliction of emotional distress. *See Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 31 (Tenn. 2005) (stating that "[t]he tort of intentional infliction of emotional distress [is] also known as the tort of outrageous conduct . . . .") Metro Nashville argues that it is therefore immune to the "outrageous" conduct claim (Count Five). The plaintiffs offer no meaningful response to this argument, which the court

9

finds to be persuasive. Because the outrageous conduct claim against Metro Nashville will be barred regardless of the plaintiffs' amendments to the First Amended Complaint, the court will dismiss this claim with prejudice.

        3.        <u>Assault and Battery</u>

The TGTLA shields Metro Nashville from vicarious liability for the defendant officers' alleged intentional torts. *See Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, *Tenn.*, 340 S.W.3d 352, 368-69 (Tenn. 2011). However, Metro Nashville is not immune from liability if the plaintiffs make a "direct showing [of] negligence on the part of the governmental entity" that proximately caused or enabled the intentional tort. *Id.* at 368. Here, Count Four does not allege that Metro Nashville's negligence led to the alleged assault and battery by the defendants, let alone identify any acts of negligence attributable to Metro Nashville. The plaintiffs do not assert any counter-argument, other than to state, without citation to any authority, that they "still insist that [Metro Nashville] is liable for the intentional torts of assault and battery." (Docket No. 35 at p. 21.) Paragraph 1 of the First Amended Complaint (and the Proposed Amended Complaint) states that the plaintiffs in part are pursuing Metro Nashville under a "respondeat superior" theory of liability. Consistent with that paragraph and in the absence of any meaningful response to Metro Nashville's argument here, the court construes the plaintiffs as asserting an assault and battery claim against Metro Nashville pursuant to a vicarious *liability/respondeat superior* theory of liability. Metro Nashville cannot be held vicariously liable for assault and battery by the defendant officers. Therefore, subject to this construction of the plaintiffs' assault and battery claim, the court will dismiss the plaintiffs' assault and battery claims against Metro

Nashville with prejudice.[8]

## III. Remaining Claims

The officer defendants have argued that (1) the plaintiffs' First Amended Complaint does not assert claims under § 1983 (Count One) against the officer defendants; (2) regardless of its ambiguity relative to particular officer defendants, the First Amended Complaint does not contain factual allegations sufficient to maintain claims against the officer defendants for malicious harassment (Count Two) and outrageous conduct (Count Five); and (3) the plaintiffs must distinguish among the individual defendants with respect to the remaining claims (Counts Four and Six), or else have those claims dismissed for failure to identify any misconduct by particular individuals.

With respect to the § 1983 claims, the plaintiffs have argued that the First Amended Complaint does assert those claims against the individual officers. Also, the plaintiffs' Proposed Second Amended Complaint would clearly state that the plaintiffs are asserting the § 1983 claims against the individual officers. Because the court will permit the plaintiffs to clarify the applicability of the § 1983 claims to the defendant officers through an amendment to the First Amended Complaint under the liberal Rule 15(a) standard, the defendants' argument relative to the applicability of the § 1983 claim(s) asserted in the First Amended Complaint will be moot.[9]

---

[8]Typically, where a plaintiff fails to plead sufficient facts to establish a claim under the TGTLA or where this court declines to exercise jurisdiction over a pendent TGTLA claim, the court would dismiss that claim without prejudice. Here, however, under the theories of liability asserted by the plaintiffs, Metro Nashville is immune to the plaintiffs' negligence, outrageous conduct, and assault and battery claims, regardless of whether the plaintiffs otherwise establish the elements of those claims. Therefore, relative to Metro Nashville, dismissal of these claims with prejudice is warranted here.

[9]Once the plaintiffs file a Second Amended Complaint in compliance with the accompanying Order, the officer defendants may move to dismiss the § 1983 count against them

As to the outrageous conduct and malicious harassment claims, the Rule 12(b)(6) motions by the defendant officers will be mooted by (1) the proposed amendments to the First Amended Complaint, which introduce new allegations relevant to both claims, and/or (2) the more definite statement of the claims relative to particular defendant officers. Therefore, the court will deny the defendants' motion to dismiss these claims (as they are asserted in the First Amended Complaint) as moot. However, once the plaintiffs file a Second Amended Complaint in compliance with the accompanying Order, the defendants will be without prejudice to move for dismissal of those claims on any applicable grounds.

The court also finds that the plaintiffs must clarify their allegations against the defendant officers. If a pleading fails to specify its allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Although federal courts generally disfavor Rule 12(e) motions, a motion for a more definite statement may be granted if a complaint is "so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *See E.E.O.C. v. FPM Grp., Ltd.*, 657 F. Supp. 2d 957 (E.D. Tenn. 2009); *Fed. Ins. Co. v. Webne*, 513 F. Supp. 2d 921, 924 (N.D. Ohio 2007). Here, the plaintiffs named twelve officers as defendants, yet their allegations only reference three of those officers by name, and do not even allege that the remaining nine had any role whatsoever in the alleged misconduct. Furthermore, the plaintiffs allege that separate incidents occurred but have not specified whether each

---

on any applicable grounds. Given the ambiguity in the First Amended Complaint, it would be inequitable to deny the defendants a full and fair opportunity to address the sufficiency of the clarified § 1983 claims.

defendant officer allegedly played a role in either or both incidents. The plaintiffs named these 12 individuals for a reason – perhaps because of information contained in the OPA report – and must clarify how those individuals could be held legally responsible for some or all of the alleged acts of misconduct. Under the circumstances, the court finds that exceptional relief under 12(e) is warranted here. Therefore, the court will order the plaintiffs to file a Second Amended Complaint that clarifies the alleged connections between each defendant officer and the conduct at issue in this lawsuit. Once the plaintiffs file a Second Amended Complaint in compliance with the accompanying Order, the officer defendants will be without prejudice to move for dismissal of the claims asserted against them (whether under state or federal law) on any applicable grounds.

Finally, because the plaintiffs' proposed amendments relate in part to the sufficiency of the § 1983 claims against Metro Nashville, the court will deny as moot Metro Nashville's request to dismiss those claims as they are asserted in the First Amended Complaint. Once the plaintiffs file the Second Amended Complaint, Metro Nashville may challenge the sufficiency of the amended allegations, as appropriate. For the same reasons, the court also denies as moot Metro Nashville's request that the court refuse to exercise supplemental jurisdiction over the plaintiffs' state law claims. Metro Nashville may raise this argument again in responding to the Second Amended Complaint, if appropriate.

To be clear, with the exception of claims dismissed by the court in the accompanying Order, the plaintiffs may include in their Second Amended Complaint both (a) the proposed amended allegations in their Proposed Second Amended Complaint and (b) clarifications responsive to the Motions for a More Definite Statement. With that understanding, the plaintiffs

13

are advised not to expect any further leniency from the court with respect to clarifying their claims.

## **CONCLUSION**

For the reasons stated herein, the court finds as follows:

1. Count Three will be dismissed with prejudice against all defendants. The plaintiffs' Second Amended Complaint will not include this claim.

2. With respect to Metro Nashville, Counts Four (Assault and Battery), Five (outrageous conduct) and Six (negligence/gross negligence) will be dismissed with prejudice. The Second Amended Complaint filed in compliance with the accompanying Order shall not include these claims against Metro Nashville.

3. The defendants' Motions for More a Definite Statement will be granted. The plaintiffs will be ordered to file a Second Amended Complaint that alleges facts specific to the named officer defendants.

4. The defendants' remaining requests to dismiss Counts One, Two, Four, Five, and Six will be denied as moot.

5. The court will grant the plaintiffs leave to file a Second Amended Complaint. However, in the interest of judicial economy, the plaintiffs will not be permitted to file the Proposed Second Amended Complaint in its current form.

6. Once the Second Amended Complaint is filed pursuant to the accompanying Order, all defendants will be without prejudice to move for dismissal of any and all claims asserted therein, as appropriate.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge