UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| RONRICO JOSLIN, WALTER JOSLIN, )<br>and MARY MITCHELL, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>METRO NASHVILLE/DAVIDSON )<br>COUNTY, ET AL., )<br>)<br>Defendants. ) | Case No. 3:12-cv-1284<br>Judge Aleta A. Trauger |

# MEMORANDUM

Pending before the court are two motions seeking dismissal of certain claims asserted in the plaintiffs' Second Amended Complaint. Defendant Edward Strickling has filed a Motion to Dismiss (Docket No. 58), and defendants Michael Eby, Michael Galluzzi, David Layne, William Mackall, Robert McIsaac, Metro Nashville/Davidson County ("Metro Nashville"), Julian Pirtle, Adam Read, and Andre Starling have jointly filed a Partial Motion to Dismiss (Docket No. 60). The plaintiffs have filed a cursory Response in opposition to both motions (Docket No. 70), and the defendants filed Replies (Docket Nos. 79 (Strickling) and 75 (the other moving defendants)). For the reasons stated herein, the Partial Motion to Dismiss will be granted, and Officer Strickling's Motion to Dismiss will be granted in part and denied in part.

# BACKGROUND

In an earlier Memorandum and associated Order (Docket Nos. 50 and 51), the court ruled on motions filed by the defendants under Fed. R. Civ. P. 12(b)(6) (failure to state a claim) and Rule 12(e) (request for a more definite statement), and by the plaintiffs under Rule 15(a) (motion

1

for leave to amend). In the interest of fairness and judicial economy, the court dismissed with prejudice certain claims brought by the plaintiffs against particular defendants and permitted the plaintiffs to file a Second Amended Complaint that clarified certain claims.[1] The plaintiffs filed their Second Amended Complaint ("SAC") in compliance with the court's directive. (Docket No. 17.) The SAC asserts (1) claims under 42 U.S.C. § 1983 against Metro Nashville and the 12 individual officer defendants; and (2) Tennessee statutory and common law claims against the 12 individual officer defendants. In particular, the SAC has substantially clarified the nature of the plaintiffs' claims as they relate to the individual defendant officers.

Strickling has moved to dismiss all of the claims against him. The remaining moving defendants have moved to dismiss the following claims: (1) § 1983 claims against (a) Officers Pirtle and Starling (and by extension Metro Nashville) for "entrapping" Walter Joslin; (b) Officers Starling, Pirtle, Read, and Eby for "racially motivated" unconstitutional conduct; and (c) Officers Starling, Read, and Eby for utilizing excessive force; and (2) claims under Tennessee law against (a) Officers Starling, Pirtle, Read, and Eby for "malicious harassment", (b) Officers Starling, Read, and Eby for assault and battery; and (c) Officers Starling and Eby for "outrageous conduct." Subject to their Partial Motion to Dismiss, Metro Nashville and Officers Layne, Mackall, Read, Pirtle, McIsaac, Galluzzi, and Donaldson have otherwise filed Answers to the SAC. (*See* Docket Nos. 62-68.)[2]

---

[1]The court advised the plaintiffs "not to expect any further leniency from the court with respect to clarifying their claims." (Docket No. 49 at pp. 12-13.)

[2]Officers Eby and Starling have not filed Answers, presumably because the Partial Motion to Dismiss requests dismissal of all claims against those two officers. Also, as the court discussed in its previous Memorandum and Opinion, the plaintiffs apparently did not serve Officers Kizer or Sweeny with the First Amended Complaint. (*See* Docket No. 49 at p. 4 n.4.) The docket similarly does not reflect any attempt to serve Kizer or Sweeny with the SAC. Thus,

2

In response to both motions, the plaintiffs have simply incorporated by reference their arguments with respect to the First Motion to Dismiss. Therefore, to the extent the defendants have raised new arguments in the pending motions, those arguments are unrebutted.

## MOTION TO DISMISS STANDARD

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

the docket contains no response to the SAC by Kizer or Sweeny.

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## ANALYSIS

I. **Partial Motion to Dismiss**

   A. **§ 1983 Entrapment Claims Against Officers Pirtle and Starling**

With respect to the § 1983 claims against Officers Pirtle and Starling (and by extension Metro Nashville) for "entrapping" Walter Joslin into committing a drug-related offense, the defendants argue that the claim has not accrued because the plaintiffs have not shown that Walter Joslin's underlying conviction[3] "has been reversed on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeus corpus." *Harrison v. Michigan*, – F.3d –, 2013 WL 3455488, at *5 (6th Cir. July 10, 2013) (quoting *Heck v. Humphrey*, 512 U.S.477, 487 (1994)). The plaintiffs have not contested the defendants' factual representations or the defendants' interpretation of *Humphrey*'s application here. *See LaFountain v. Harry*, 716 F.3d 944, 950 (6th Cir. 2013). Therefore, the court will dismiss the "entrapment" claims against Officers Pirtle and Starling. However, in dismissing the claim, the court is not holding that discovery concerning the circumstances of Walter Joslin's arrest is irrelevant to this case; the court is simply finding that, as the circumstances are alleged in the SAC, the plaintiffs cannot

---

[3]The SAC does not state that Walter Joslin was actually convicted of an associated drug crime. However, the plaintiffs have not contested the defendants' representations that (a) Walter Joslin was convicted of the (alleged) crime for which he was arrested in December 2011; and (b) the conviction has not been reversed on appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeus corpus. Moreover, the court has twice permitted the plaintiffs' to amend the SAC, ordered them to clarify their claims, and specifically told them to expect no further leniency from the court with respect to the clarity of their allegations  Therefore, the court will assume the defendants' representations to be true.

maintain an actionable claim for wrongful imprisonment under § 1983 against Officers Pirtle or Starling (or any other defendant) on an entrapment theory.

> B. § 1983 Racially Motivated Conduct, § 1983 Excessive Force, Tennessee Malicious Harassment, Tennessee Assault and Battery, and Tennessee Outrageous Conduct Claims Against Officers Starling, Pirtle, Read, and Eby.

In the SAC, the plaintiffs alleged § 1983 claims against Officers Layne, McIsaac, Galluzzi, and Mackall premised on racially motivated conduct. However, the plaintiffs do not contest the defendants' position that the plaintiffs have not similarly alleged claims against Officers Starling, Pirtle, Read, and Eby premised on racially motivated conduct. Therefore, the plaintiffs' § 1983 claims against those officers will be dismissed as to that theory of liability. The plaintiffs have not addressed the defendants' argument that the malicious harassment claims against those four particular officers must fail for the same reason. *See Davidson v. Bredesen*, 330 S.W.3d 876, 889 (Tenn. Ct. App. 2009) (a malicious harassment claim requires a plaintiff to show "that the perpetrator was motivated by the victim's race, color, religion, ancestry or national origin."). Therefore, those claims will also be dismissed.

In the SAC, the plaintiffs alleged excessive force claims against Officers Layne, McIsaac, Donaldson, Galluzi, Pirtle, and Mackall. In response to the pending Motion to Dismiss, the plaintiffs have not contested that they have failed to allege excessive force claims against Officers Starling, Eby, and Read. Indeed, the SAC contains no allegations that Officers Starling, Eby, or Read used force of any kind (excessive or otherwise) on one or more plaintiffs. Therefore, the plaintiffs have not articulated any viable excessive force claim against those three officers. For substantially the same reasons, the plaintiffs similarly have not alleged viable assault and battery claims against Officers Starling, Eby, or Read.

5

With respect to the outrageous conduct/emotional distress claim, the SAC alleges several "outrageous" actions related to the December 2011 and November 2012 incidents. (*See* SAC ¶¶ 125-136). Although the SAC identifies the names of the officers allegedly involved in these alleged acts, it alleges no specific conduct by Officers Starling or Eby. The plaintiffs have not responded to the defendants' argument that the "outrageous conduct" claims must be dismissed as to Officers Starling and Eby. Therefore, those claims will be dismissed. Similarly, as to the "negligence/gross negligence claims," the plaintiffs have not contested that, in contrast to other individual defendants, the relevant allegations (¶¶ 139-148) do not identify any specific conduct by Officers Starling or Eby. Thus, the court will dismiss those claims as well.

### C. Additional Claims Relative to All Defendants

In separate footnotes in their Memorandum, the defendants argue that the plaintiffs' purported claims under Tenn. Code Ann. § 8-8-302, claims for "whistleblower retaliation" and prior restraint claims, and claims for negligence/gross negligence should be dismissed. (*See* Docket No. 61 at p. 9 n.2, p.10 n.3, and p. 11 n.4.) Although the defendants' underlying motion did not formally request relief relative to all defendants, these footnotes adequately placed the plaintiffs on notice of the defendants' intent to dismiss these claims and the rationale for the defendants' position. The plaintiffs' cursory response fails to address the defendants' arguments with respect to these claims. In the absence of any meaningful response, the court finds the defendants' arguments to be persuasive.

First, Tenn. Code Ann. § 8-8-302 only applies to sheriff deputies and, therefore, has no application here. *See Swanson v. Knox Cnty.*, No. E2007-00871-COA-R3-CV, 2007 WL 4117259, at *4 (Tenn. Ct. App. Nov. 20, 2007) (citing *O'Neal v. DeKalb Cnty.*, 531 S.W.2d 296

6

(Tenn. 1975)). Second, the court finds that the "prior restraint" and "whistleblower" retaliation claims are vague and non-specific, thereby requiring their dismissal, particularly in light of the court's previous admonition to the plaintiffs concerning the clarity of their claims. Third, as the court found in its previous opinion and which the plaintiffs have not meaningfully contested here, the plaintiffs' Tennessee "negligence" claims (Count VI) are essentially just repackaged civil rights claims. Moreover, the actions at issue involve allegations of *intentional* misconduct by the individual officers, such as using excessive force, destroying incriminating evidence, and retaliating against the plaintiffs by conducting a warrantless search and seizure. Notwithstanding the court's previous finding concerning the nature of Count VI – after which the plaintiffs had the opportunity to amend their claims – the plaintiffs have failed to identify the claims as Tennessee civil rights claims and, at any rate, have not linked the allegations to any particular type of Tennessee civil rights protections.[4] Therefore, Count VI will be dismissed.

In light of these findings, all claims against Eby and Starling will be dismissed,[5] along with the negligence/gross negligence claims against all defendants (Count VI).

## II. Officer Strickling's Motion to Dismiss

The SAC alleges that Officer Strickling "had at least some prior dealings with members of the Mitchell-Joslin extend family," including Officer Strickling's previously unsuccessful attempts to recruit Walter Joslin as an undercover informant. During the December 2011

---

[4]Indeed, it appears that, in the "negligence/cross negligence" section of the SAC, the plaintiffs simply took the § 1983 allegations and replaced the words "violated the civil rights of" with "engaged in negligence/gross negligence against." (*Compare, e.g.*, SAC ¶ 72 *with* ¶ 143.)

[5]As the defendants have pointed out, the SAC suggests that Officer Eby may have been named by mistake based on the fact that he, like Officer McIsaac, had a goatee in his official police identification photo (SAC ¶ 15). The plaintiffs have not contested this interpretation of their allegations.

incident, the SAC alleges that Officer Strickling was inside the crack house making arrests when the incident occurred. Officer Strickling rode with Walter Joslin in the ambulance that transported Walter to the hospital. Strickling allegedly received from Detective Donaldson a cell phone belonging to Walter or a member of his family. Officer Strickling allegedly brought the phone to Ronrico's room, where Ronrico claimed ownership and received the phone from Strickling. Officer Strickling was questioned by the OPA about the missing SIM card from Ronrico's phone, but denied any knowledge concerning the missing card. The SAC alleges that Strickling (and/or certain other officers who possessed Ronrico's cell phone) "tampered with," removed, and/or illegally confiscated Ronrico's cell phone video. The SAC also alleges that, after the OPA issued its report in October 2012, Officer Strickling was the lead officer who decided to initiate the raid on Mitchell's home in November 2012. Strickling allegedly falsely represented to a Tennessee court that he had obtained Mitchell's oral consent to that search. Strickling allegedly later signed the warrant for Mitchell's arrest. The SAC alleges that Strickling ordered the November 2012 raid in retaliation for the plaintiffs' complaints that gave rise to the OPA investigation.

Officer Strickling argues that all claims against him should be dismissed. The court agrees that the SAC allegations cannot support any of the following claims against Officer Strickling: (1) § 1983 claims premised on conduct other than removing/confiscating the cell phone video and conduct related to the November 2012 incident; (2) assault and battery; (3) claims by Ronrico and Walter (as opposed to Mitchell) for the allegedly unlawful entry in November 2012; (4) claims for "prior restraint" and/or "whistleblower retaliation," (5) malicious harassment; and (6) negligence/gross negligence.

8

However, the court finds that certain claims against Officer Strickling will proceed. First, the SAC sufficiently alleges that Officer Strickling was one of the officers who removed and/or confiscated Ronrico's cell phone video in an attempt to destroy incriminating evidence. Officer Donaldson apparently recalled that Officer Strickling had possession of the phone before it was returned to Ronrico, and it is significant that the OPA specifically questioned Officer Strickling about the phone and the associated video card during its investigation. The SAC also alleges that Officer Strickling ordered and participated in a retaliatory and illegal search and seizure of Mitchell's house, that he authored a trumped-up warrant for Mitchell's arrest, and that he lied to a Tennessee court about receiving Mitchell's consent to that search. If true, Officer Strickling may at least be liable to Mitchell with respect to November 2012 incident.[6]

Second, whether Officer Strickling's conduct was sufficiently "outrageous" to satisfy the tort of "outrageous conduct" is a matter best addressed at a later stage in these proceedings based on a developed record. There is at least a colorable argument that the cell phone incident and the November 2012 raid on Mitchell's home reflected conduct "not tolerated by civilized society." *See Bain v. Wells*, 936 S.W.2d 618, 822 (Tenn. 1997); *see also* Tenn. Pattern Jury Instructions–Civil 4.39 (stating that outrageous conduct is "conduct that goes beyond the bounds of decency and is considered atrocious and utterly intolerable in a civilized community. It is conduct that would cause an average member of the civilized community to immediately react in outrage upon hearing the facts of the incident.") Here, the allegations are that Officer Strickling may have destroyed or concealed evidence of serious misconduct by his fellow officers and that,

---

[6]Although Officer Strickling's motion purports to seek dismissal of all claims against him, Officer Strickling's Memorandum does not actually contest that Mitchell (as opposed to Walter and Ronrico) may maintain a claim against him related to the November 2012 incident.

after the plaintiffs complained about their treatment to the OPA, he retaliated by raiding Mitchell's house one month after the OPA report issued, conducting a warrantless search, and lying under oath to cover his tracks. These are serious allegations that warrant discovery. Moreover, aside from largely generic citations to Tennessee law, Officer Strickling has not provided any Tennessee authority showing that the referenced conduct is not potentially "outrageous."

## CONCLUSION

For the reasons stated herein, the Partial Motion to Dismiss will be granted and Officer Strickling's Motion to Dismiss will be granted in part and denied in part.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge